**William C. HALES, Plaintiff,**

v.

**LIFE INSURANCE COMPANY OF ALABAMA and Blue Cross and Blue Shield of Alabama, Defendants.**

**No. 3:97CV122LN.**

United States District Court, S.D. Mississippi, Jackson Division.

Dec. 18, 1997.

757

Michael V. Ward, Canton, MS, Barbara A. Bluntson, Office of the Attorney General, Jackson, MS, for Plaintiff.

William T. Siler, Jr., Aubry Matt Pesnell, Phelps Dunbar, Jackson, MS, for Defendants.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on the motion of defendants Life Insurance Company of Alabama (LICOA) and Blue Cross and Blue Shield of Alabama (Blue Cross) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff William C. Hales has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defendants' motion is well taken and should be granted.

The basic facts which have led to this lawsuit are not in dispute. At the time plaintiff became employed by LICOA as an insurance agent in November 1989, he became covered under LICOA's employee health benefit plan, which was offered to LICOA's "eligible" employees. The insurance carrier for the plan was Blue Cross, which also served as the plan administrator. Eligibility for plan participation was prescribed by LICOA's Agency Field Manual, which provided, *inter alia*, that "[a]ny agent who does not submit at least $12,000 in written annualized premium per year will no longer be eligible for [LICOA's] group health coverage." The manual further recited the following, immediately following the rules for eligibility: "THERE ARE NO EXCEPTIONS TO ANY OF THE ABOVE RULES."

Plaintiff continued to be eligible for and participated in the health plan until the end of 1991, when it was determined that his annual sales had dropped from over $12,000 in 1990 to only $1,283.52 for the 1991 calendar year. Defendants therefore canceled plaintiff's coverage on January 30, 1992, effective January 1, 1992. Later, beginning in December of that year, plaintiff, who had continued to be employed by LICOA throughout 1992 despite his lack of sales activity, was hospitalized for a period of weeks and incurred substantial medical expenses.[1] At some point thereafter, plaintiff submitted to Blue Cross a claim for the expenses related to his hospitalization. After Blue Cross denied the claims in December 1995 on the basis that plaintiff's coverage had been canceled as of January 1, 1992, plaintiff filed suit contending that benefits had been wrongly denied. Ultimately, plaintiff voluntarily dismissed his suit so that he might exhaust his administrative remedies, follow-

1. Though not relevant for purposes of the present motion, the court notes that plaintiff was diagnosed as suffering from severe hemorrhagic pancreatitis, which caused him to be hospitalized for approximately two months and to incur medical expenses of approximately $350,000.

ing which he resubmitted his claims to Blue Cross for payment. Blue Cross again denied plaintiff's claim, asserting that plaintiff's coverage had been canceled due to his ineligibility, but concluding further, contrary to the plaintiff's urging, that plaintiff was not entitled to extended, or continuation coverage under the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. § 1162, because no "qualifying event" had occurred that would have given plaintiff any rights under COBRA to continued coverage. In light of Blue Cross' denial of coverage, plaintiff filed this suit, charging that defendants violated his rights under ERISA and COBRA in that they failed to provide him with a copy of the summary plan description which explained the benefits and eligibility requirements of LICOA's plan, that LICOA failed to inform him that his coverage under the plan had been canceled, and that he was not afforded the opportunity to elect continuation coverage under the plan.

Defendants have moved for summary judgment on each of the plaintiff's putative claims, asserting that (1) Blue Cross correctly determined under the terms of the plan that plaintiff became ineligible for coverage once his annualized premium sales dropped below the amount prescribed by LICOA for eligibility for plan participation; (2) his cause of action premised on LICOA's failure to provide him with the summary plan description does not entitle him to the relief he requests, namely, the medical benefits that he would have received had he remained covered, or any relief, since any failure to comply with the ERISA requirement to supply a copy of the summary plan description was merely a technical violation for which no remedy is provided in the absence of bad faith or active concealment; (3) neither ERISA nor COBRA required defendant to notify plaintiff that his health care benefits had been canceled; and (4) plaintiff was not entitled to notice of entitlement to continuation coverage under COBRA because no "qualifying event" occurred which would have triggered the duty to notify plaintiff of his right to such coverage.

In his response to defendants' motion, plaintiff does not take issue with defendants' positions on points (1), (2) and (3), and has, in the court's view, by essentially failing to respond in any manner to those aspects of the motion, implicitly conceded those parts of the motion. The sole claim which plaintiff has pursued in response relates to issue (4), his alleged entitlement to notification by LICOA of his right to continuation coverage under COBRA. More to the point, plaintiff devotes his response entirely to establishing his contention that a "qualifying event" did in fact occur which under COBRA required LICOA to inform him of his right to continued coverage.

COBRA mandates that "[t]he plan sponsor of each group health plan shall provide ... that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, within the election period, continuation coverage under the plan." Including among those events which are "qualifying events" under the act is the "reduction of work hours, of the covered employee's employment." 29 U.S.C. § 1163.[2] Plaintiff asserts that the drop in the amount of his premium sales which precipitated the cancellation of his insurance coverage was the equivalent of a cancellation of coverage due to a reduction of work hours. To reach this conclusion, he reasons that insurance agents employed by LICOA, like most insurance agents, do not work on an hourly basis, or a set number of hours, but rather work "in the field," meeting with pro-

---

**2.** All of the events which are "qualifying events" are set forth in 29 U.S.C. § 1163 as follows:

   1. the death of the covered employee;
   2. the termination (other than by reason of such employee's gross misconduct), or reduction of work hours, of the covered employee's employment;
   3. the divorce or legal separation of the covered employee from the employee's spouse;
   4. the covered employee becoming entitled to benefits under Title XVIII of the Social Security Act;
   5. a dependent child ceasing to be a dependent child under the general applicable requirements of the plan;
   6. a proceeding in a case under Title XI, United States Code, commencing on or after July 1, 1996, with respect to the employer from whose employment the covered employee retired at any time.

spective clients where and when it is convenient for those prospective clients. He argues that "[t]he accepted gauge or standard of an insurance agent's level of productivity, as an employee, is the amount of earned premiums produced on an annual basis [and] not an accounting of hours of labor within the employer's business establishment," and that therefore, "a reduction of earned premiums in the eyes of the insurance company is likened or equivalent to a reduction of work hours which is a qualifying event under 29 U.S.C. § 1163 [because] [i]t is a direct indicator of the 'number of work hours' by any particular agent and was an event utilized by LICOA to determine eligibility under its plan...." The court is not persuaded that this is a correct or proper interpretation of COBRA.

COBRA does not mandate that every loss of coverage will entitle the person losing his coverage to continuation coverage; rather, it mandates continuation coverage only for persons who lose their coverage "as a result of a qualifying event." Thus, to the extent that plaintiff has tried to suggest that the fact of his loss of coverage under LICOA's ERISA plan entitled him to continued coverage, he is mistaken. The question, then, is whether plaintiff's failure to achieve the minimum annual premium sales prescribed by LICOA as a prerequisite to plan eligibility constitutes a "qualifying event." And in the court's opinion, it does not.

Congress did not define the term "qualifying event" to include a failure by a plan participant to achieve any employer-imposed performance-based criteria for plan eligibility, and thus, plaintiff's failure to achieve sufficient sales to continue his eligibility for participation in LICOA's health plan would not constitute a qualifying event, unless, perhaps, that failure could, as plaintiff reasons, be deemed the equivalent of a reduction of work hours. But plaintiff's argument on this point stems from a premise that is not necessarily true, i.e., that the amount of premiums earned is a "direct indicator of the 'number of hours worked' by any particular agent." That is not necessarily a true premise because there can be any number of factors, unrelated to the number of hours worked,

which might affect an agent's ability to generate premium sales, such as inefficiency, ineffectiveness or a poor market for the product.

For these reasons, the court concludes that defendant has established by uncontroverted evidence that plaintiff became ineligible for coverage under LICOA's ERISA plan due to plaintiff's deficient sales performance, and that because no qualifying event occurred which under COBRA would have entitled him to continued coverage, his claims in this lawsuit fail as a matter of law. Accordingly, it is ordered that defendants' motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.